UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MENACHEM DAVID LEFF, | ) |
|                 Plaintiff, | ) |
| v. | ) C.A. No.: |
| YAIR MATAN and KARISH KAPITAL LLC, | ) |
|                 Defendants. | ) |

Plaintiff Menachem David Leff ("Leff") brings this action against Yair Matan ("Matan") and Karish Kapital LLC ("Karish," and collectively with Matan, "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action to void an illegal brokerage agreement and recover damages relating to Defendants' management of Leff's invested capital in merchant cash advances ("MCA"). Defendants obtained $125,000 in invested capital from Leff and managed that money by investing the capital in various MCA agreements.

2. Defendants, however, fraudulently induced the investment and then mismanaged the investment once the money was in their hands. Specifically, Leff explicitly limited the amount of money that could be invested in any MCA transaction to 15% of his principal investment. Defendants represented that they had similar arrangements with other investors and that they would do the same with Leff. Defendants, however, ignored this limitation and overinvested 92% of Leff's capital with only two merchants, resulting in significant damages. This also constitutes a general breach of fiduciary duty to diversify Leff's investment, over which Defendants exercised full control, and a breach of the agreement with Leff.

3. Further, Defendants' conduct violates the Securities Exchange Act by acting as an unregistered broker-dealer and the Investment Adviser Act by acting as an unregistered investment adviser. In each case, federal law provides that the agreements are void and the money must be returned.

4. Thereafter, Leff sought to settle his claims against Defendants. Defendants agreed to settle with Leff for $45,000, but then refused to pay after Leff accepted.

5. Defendants are required to return the investment principal under federal law and are liable to Leff for damages for fraudulent inducement, breach of fiduciary duties, and breach of contract.

## JURISDICTION AND VENUE

6. The federal law claims asserted herein arise under §§ 15(a) & 29(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78o(a) & 78cc(b), and §§ 203 & 215 of the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-3 & 80b-15.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, § 27 of the Exchange Act, 15 U.S.C. §78aa, and § 214 of the Investment Advisers Act, 15 U.S.C. § 80b-14.

8. This Court has jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Leff's federal claims that they form part of the same case or controversy.

9. This Court has jurisdiction over each Defendant named herein because each Defendant has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), § 27 of the Exchange Act, and § 214 of the Investment Advisers Act because Defendants are located in this district and Defendants have committed their tortious and illegal conduct in this district, and Defendants transact business in this district.

## PARTIES

11. Leff is an individual and a resident of Queens, New York.

12. Defendant Matan is an individual and a resident of Queens, New York and the sole member and sole employee of Karish.

13. Defendant Karish is a limited liability company organized and existing under the laws of the State of New York. Karish's principal office is located in New Hyde Park, New York.

## FURTHER SUBSTANTIVE ALLEGATIONS

**Background**

14. Karish is a company that purchases the accounts receivables of merchants across the country at a discount, profiting when and to the extent that the merchants recover payments against their receivables in excess of the original advance. These transactions are often referred to as merchant cash advances ("MCA").

15. Karish's business is funded with capital invested by individuals who have no management authority in either Karish's business or the business of the merchants that Karish funds. To that end, Defendants offer the participation in Karish's purchases of receivables with the opportunity to profit from Karish's sourcing and managing of such investments and the related merchants' revenue, which is paid back to Karish. Karish is also paid commissions on the investments placed on behalf of its clients, and as sole member of Karish, Matan is paid directly through the placement of these investments.

16. On information and belief, Karish also gathers capital for other MCA companies and short-term lenders. An investor presentation provided by Defendants to Leff in the course of soliciting Leff's investment stated, "With the proper underwriting guidelines, 6th Avenue Capital can seize this opportunity while minimizing risk and increasing profitability by achieving higher buy rates with consolidation . . . ." According to its website, "6th Avenue Capital is a New-York based financial services firm providing short term funding up to 12 months, a data driven underwriting process, fast access to capital (within 24 – 48 hours), and variable payment options (daily, weekly, and twice weekly) for SMBs up to $500,000."

17. An MCA is not a loan. Indeed, most MCA contracts specifically state that the underlying transaction is not a loan, and that the MCA contract does not have an absolute obligation of repayment. This characteristic is critical because MCAs in general have the potential to generate returns that would be in excess of legal limits on interest rates, and classification of an MCA as a loan could render the agreement void.

**Leff Invested With Defendants**

18. Beginning on or before January 2018, Leff and Defendants began discussions concerning Leff's investment with Defendants.

19. On January 31, 2018, Defendants sent to Leff a proposed agreement. Under the agreement, Karish would from time to time offer to sell to Leff participations in various MCA transactions. Thereafter, Leff could choose whether to invest in the particular MCA by returning an offer within two days or some other specified time and paying the pro rata portion of the purchase price associated with the participation.

20. The parties did not undertake the transaction contemplated by the agreement sent by Defendants to Leff.

21. Prior to funding his investment, Defendants made representations concerning the diversification and reinvestment of investment funds. Specifically, Defendants made the following statements by email:

> [O]n the consolidations, you have the luxury to tell me what percentage you want to participate. For example, if you'll tell me that you want to participate in 20% in each deal, we will use that as a threshold and allocate the funds accordingly. This is where the 'cash balance' reference I used earlier in this chain. Since we are not going to use it all at once. I can tell you that some of our syndicators still have 30-40k cash balance, because I keep them in the small percentage in every deal, but across all the deals we get in over $5k and excluding consolidation.

22. In addition, in a PowerPoint presentation sent by Defendants to Leff, Defendants touted Karish's underwriting process in order to solicit Leff's investment with Defendants.

23. As discussed below, Matan admitted in the arbitration on September 5, 2019 that he discussed with Leff that in actuality the Defendants did not present each MCA to the participants, neither Leff nor others, and the understanding communicated to Leff in the initial discussion between Mr. Leff and Matan was that the Defendants almost never sent specific offers to the participants other than in especially large transactions.

24. In addition, when Mr. Leff agreed to place his investment with Defendants, Leff stated that he was "ready to invest $125k, no more than 15% in each deal. Interest not to be reinvested." Accordingly, no more than $18,750 could be invested by Defendants in any MCA transaction with any given merchant.

25. Defendants accepted Leff's terms by responding by email with wiring instructions.

26. Instead of undertaking the transaction contemplated by the proposed agreement, on February 5, 2018, Leff wired to Karish $125,000 to be managed by Defendants in their investment in MCA transactions.

**Defendants Mismanaged Leff's Funds and Violated Their Fiduciary Duties**

27. Defendants' mismanagement of Leff's investment is multifaceted.

28. First, Defendants violated the 15% cap imposed by Leff when he made the investment in the first place.

29. On February 28, 2018, Defendants placed $76,100 of Leff's investment, *i.e.*, 60.88% of the investment, in an MCA transaction with a company called Evelar. On the same day, Defendants placed $26,400 of Leff's investment, *i.e.*, 21.12% of the investment, in an MCA transaction with a company called M&H Fleet Services Inc.

30. Then, on March 22, 2018, Defendants placed an additional $12,000 of Leff's investment with M&H. As a result, $38,400 of Leff's investment, *i.e.*, 30.72% of the investment, was concentrated in M&H.

31. Accordingly, $57,350 of Leff's investment was improperly invested in Evelar, and $19,650 was improperly invested with M&H. Therefore, Defendants improperly invested $77,000 of Leff's investment principal, in addition to collecting fees on a percentage basis of the improperly invested funds.

32. Second, even without specifically agreeing with Defendants not to exceed 15% of the total principal invested in any particular transaction, Defendants nonetheless breached their fiduciary duties to Leff by failing to diversify properly and investing too heavily in the purchase of two merchants' receivables. Indeed, 92% of Leff's principal was invested with only two merchants

33. Third, Defendants breached their duty of loyalty by misappropriating the collections of the various tranches of investment with M&H. Based on publicly available documents filed by Karish in New York state court, Karish entered into four separate funding rounds of M&H, on February 28, 2018, March 22, 2018, April 9, 2018, and May 17, 2018.

6

34. Defendants, however, did not apply the collections from M&H evenly across the participants in the various transactions despite the fact that the identities of the participants in the funding rounds were not the identical. Specifically, Defendants collected and applied 104.08% of the principal advanced for the May 17, 2018 funding to M&H, but only 84.38%, 64.85%, and 63.20% of the February 28, March 22, and April 9 funding rounds, respectively. Had Karish distributed the collected funds without discrimination, each would have received either 91.54% or 95.31% of the principal advanced.[1] Properly distributing the collections from M&H would have increased Leff's recovery from the M&H transactions by $4,507.87 or $6,020.95.

35. Defendants' breaches of fiduciary duty appear to extend to other investors. Hawthorne Funding, LLC, has alleged in an action before the New York State Supreme Court, Nassau County, Index No. 602151/2019, that despite demanding supporting documents such as contracts with merchants, financial statements and officers' certificates delivered in connection with contracts, and payment notification or the establishment of a syndicator portal to track performance of investments. In addition, Hawthorne came to an agreement in principal with Karish to terminate their relationship and buy out Hawthorne's positions, but Karish reneged on the agreement. Karish also refused to provide an accounting to Hawthorne in order to determine if Karish had been returning the true amounts owed under the various MCA agreements.

**<u>Leff Attempted to Settle the Claims Against Defendants, but Defendants Breached</u>**

36. In the summer of 2018, Leff confronted Defendants about several issues, including Defendants' excessive concentration of investment in only two merchants in violation of Leff's specific instructions and his agreement with Defendants.

---

[1] It is unclear whether the February 28, 2018 advance was $176,000 or $201,000, which affects the percentage recovered.

37. On September 5, 2018, Defendants offered to return Leff's original investment less moneys already received, approximately $80,000. After several emails back and forth, at 2:34 p.m. on September 5, 2018, Defendants made a take-it-or-leave-it offer: "My offer is final and will be on the table until the end of the day."

38. At 4:30 p.m. on September 5, 2018, Leff responded to the offer: "I'm accepting the offer. Please wire the remaining 45k."

39. Four minutes later, Defendants responded: "I left the office for the day and the offer is off the table. Let me know how you would like to go about a beis din . . . ."[2]

40. Defendants refused to make the settlement payment to Leff despite the clear offer and acceptance.

**The Arbitration**

41. Thereafter, Leff attempted to bring Defendants to an arbitration before a *beis din* in accordance with the parties' wishes. Defendants, however, continued to resist submitting to the arbitration.

42. After several months, Defendants agreed to submit to arbitration, but on the condition that Matan's submission to the arbitration was predicated on a finding by the *beis din* that there is potential individual liability.

43. On September 5, 2019, the parties sat before an arbitration panel of the Beth Din of America (the "Arbitration Panel").

44. In the course of the hearing, Defendants admitted that investors in Karish's MCA deals were almost never consulted before Defendants invested their money in Karish's purchase of merchant's receivables.

---

[2] A *beis din* is an arbitration panel that adjudicates according to Jewish law, also known as "halacha."

45. The Arbitration Panel found that there was a potential for Matan's individual liability and therefore Matan should sign an arbitration agreement that would bind him personally to the decision of the Arbitration Panel. Indeed, the Arbitration Panel stated that as a matter of *halacha*, Matan was required to sign an arbitration agreement.

46. Matan refused to sign an arbitration agreement that would bind him personally to the Arbitration Panel.

47. As a result, in accordance with the original arbitration agreement, the Arbitration Panel dismissed the arbitration without prejudice and granted Leff the right to pursue his claims against Defendants in court.

## CLAIMS FOR RELIEF

### COUNT I
### Void of Agreements Under the Exchange Act

48. Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

49. Defendants, directly or indirectly, by the use of the mails or the means or instrumentalities of interstate commerce, while acting as or associating with a broker or dealer, effected transactions in, or induced or attempted to induce the purchase or sale of securities, while they were not registered with the Securities and Exchange Commission as a broker or dealer or when they were not associated with an entity registered with the SEC as a broker-dealer.

50. The participations in which Defendants placed Leff were securities under the Securities Exchange Act of 1934 (the "Exchange Act").

51. Leff invested his capital in a scheme and/or series of transactions to be pooled in a common enterprise with the expectation of generating profits by the efforts of Defendants and

9

the merchants whose receivables were purchased by Karish. Indeed, Leff had no contact with any merchant and his purchase of participations in the various agreements was solely directed by Defendants.

52. The receivables were purchased at a discount but do not pay an absolute or fixed return.

53. Defendants earn commissions on their sale of the participations to Leff and other investors.

54. Neither Defendant is registered as a broker-dealer.

55. Accordingly, Leff is entitled to an order voiding his agreements with Defendants and the return of all capital invested.

## COUNT II
### Void of Agreements Under the Investment Advisers Act

56. Leff incorporates by reference each and every preceding paragraph as though fully set forth herein.

57. The participations that Leff invested in are securities under the Exchange Act.

58. Defendants receive compensation while engaging in the business of advising others directly, and in many cases, by undertaking transactions on a client's behalf, in securities transactions.

59. Each of the Defendants makes use of the mails and other means or instrumentalities of interstate commerce in connection with his or its business as an investment adviser.

60. On information and belief, Defendants advise clients outside of the State of New York.

61. Neither Defendant is a registered investment adviser.

62. Accordingly, Leff is entitled to an order voiding his agreements with Defendants and the return of all capital invested.

## COUNT III
## Breach of Fiduciary Duties

63. Leff incorporates by reference each and every preceding paragraph as though fully set forth herein.

64. As set forth above, Defendants breached their fiduciary duties to Leff.

65. First, Defendants over-invested in MCA transactions with individual merchants in violation of the explicit instructions provided by Leff to Defendants. In addition, Defendants violated their duty of care by failing to sufficiently diversify the investments Defendants made on Leff's behalf.

66. Second, Defendants favored other investors by distributing the collections from M&H to certain investors over others, resulting in a loss to Leff.

67. Accordingly, Defendants should be held liable for their conversion in an amount to be determined at trial, but estimated to be greater than $83,000.

## COUNT IV
## Breach of Contract

68. Leff incorporates by reference all paragraphs of this complaint as though fully set forth herein.

69. Leff specifically stated that not more than 15% of his principal investment be invested in any particular MCA transaction.

70. Defendants accepted the condition of Leff's investment that not more than 15% of his principal investment be invested in any particular MCA transaction.

71. Defendants, however, violated this agreement in connection with two different merchants.

11

72. In addition, Defendants breached the implied covenant of good faith and fair dealing by misallocating the collections from M&H.

73. Leff has suffered damages in an amount to be proven trial, but estimated to be more than $83,000 as a direct result of Defendants' breach of the contract.

## COUNT V
## Fraudulent Inducement

74. Leff incorporates by reference all paragraphs of this complaint as though fully set forth herein.

75. As described above, Defendants made materially misleading statements concerning how Defendants limit the percentage of principal investment that would be invested with any particular merchant. Specifically, Defendants failed to disclose—in order to make other statements not misleading—that they would use more than 15% of Leff's principal investment to enter MCA agreements with a single merchant. Indeed, Defendants stated that as a result of their limitations on investment for single merchants that they provided to other investors, those investors carried significant cash balances.

76. These materially misleading statements were intended to induce Leff to invest his money with the Company for use in MCA transactions.

77. Leff did in fact invest with Defendants. Leff's reliance on the misstatements was reasonable.

78. As a result, Leff has suffered damages.

## COUNT VI
## Breach of Contract

79. Leff incorporates by reference all paragraphs above as though fully set forth herein.

80. Defendants offered to settle Leff's claims for $45,000 provided that Leff accepted by the end of the day.

81. Leff accepted the offer within the stated time limit.

82. Defendants, however, failed and continue to refuse to pay Leff the money owed under the settlement agreement.

83. Leff has suffered damages as a direct result of Defendants' breach of the contract.

## PRAYER FOR RELIEF

**WHEREFORE**, Leff demands judgment as follows:

(A) An order declaring any agreements between Leff and Defendants void and invalid and entering a judgment for the return of all money invested pursuant to those agreements;

(B) A judgment awarding Leff damages against Defendants for breaches of fiduciary duties, breach of contract, and fraudulent inducement;

(C) Awarding Leff his reasonable costs and expenses incurred in this action, including attorneys' fees; and

(D) Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Leff demands a trial by jury for those causes of action for which a jury is available.

Dated: September 25, 2019
/s/ Michael B. Ershowsky
Michael B. Ershowsky
**ERSHOWSKY P.C.**
483R Central Avenue
Cedarhurst, New York 11516
Phone: 347-346-0207
mbe@ershlaw.com

*Counsel for Plaintiff*